IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN L. TURNEY AND
PETER B. TURNEY,

|              | Plaintiffs, |              | OPINION and ORDER |
|---|---|---|---|
| v.           |             |              | 21-cv-409-jdp |
| CITY OF MELLEN, | | | |
|              | Defendant.  |              | |

---

This lawsuit involves a dispute with the City of Mellen over the status driveway on some private property. But lurking behind the driveway dispute is the re-routing of an oil and gas pipeline.

Plaintiffs Susan and Peter Turney filed this lawsuit alleging that defendant City of Mellen had taken their property by deeming a driveway on their property to be a public road, thus violating their federal constitutional rights. The driveway, which the City had deemed to be "Jaeger Road," was the only means of access to the Jaeger property north of the Turneys' property. During the course of the litigation, the City relented, the Turneys granted an easement to allow limited access to the Jaeger property, and the parties notified the court of their settlement. The court dismissed the case without prejudice. Dkt. 8.

Twenty-one days later, Enbridge Energy Limited Partnership, Enbridge Pipelines (Lakehead) LLC, and Tri-State Holdings, LLC (which the court will refer to collectively as Enbridge) moved to reopen the case and intervene under Federal Rules of Civil Procedure 24(a)(2) and (b). Dkt. 9. Enbridge had acquired an interest in the Jaeger property so that it could re-route an oil and gas pipeline over it. To effectuate its plan, Enbridge says that it needs essentially full public road access across the Turney property to get the necessary construction

equipment onto the Jaeger property. The settlement agreement between the City and the Turneys stands in its way, and Enbridge seeks to assert claims against both the Turneys and the City to undo it. Dkt. 10. The Turneys oppose the motion to intervene, Dkt. 23, and move to strike the answer and proposed counterclaim and crossclaims filed by Enbridge as untimely and improper under Rule 12(f), Dkt. 30. The City takes no position on the motion to intervene but it has submitted a brief addressing what it considers to be "significant misstatements" by Enbridge related to timeliness and notice. Dkt. 22.

Enbridge did not promptly seek to intervene even though it knew that its interests were at risk in the Turney litigation and that the City would not fully represent Enbridge's interests. And the Enbridge part of the dispute, unlike the Turneys' original claim, involves only questions of state law. So, for reasons more fully below, the court will deny Enbridge's motion to intervene. The court will deny the Turneys' motion to strike Enbridge's answer as moot.

BACKGROUND

A. Enbridge's pipeline and property interests

Enbridge owns and operates an oil and natural gas-liquids pipeline known as "Line 5," which crosses the Bad River Reservation in Northern Wisconsin. But the Bad River Band of the Lake Superior Tribe of Chippewa Indians refused to renew Enbridge's easement and filed suit in this court in 2019, to enjoin Enbridge's continued operation of Line 5 through the reservation. *See* Case No. 19-cv-602-wmc.[1] So Enbridge developed a plan to relocate a portion

---

[1] On June 29, 2023, Judge Conley entered judgment in favor of the Band on many of its claims and permanently enjoined Enbridge from operating Line 5 on any tribal territory as of June 16, 2026. *See* Case No. 19-cv-602-wmc, Dkt. 689. That case is currently on appeal.

of Line 5 and began acquiring property interests along the proposed re-route in 2020, before the Turneys filed their lawsuit. Three of these property interests cover property located immediately north of the Turneys' property.[2]

Enbridge claims that Jaeger Road, which runs across the Turneys' property, is the only means by which it can access the trustees' property to transport necessary equipment to construct and maintain the re-routed pipeline. On February 20, 2021, the Turneys' attorney told Enbridge personnel that the company was prohibited from entering or traversing the Turney property and that the Turneys did not believe that there was a right-of-way easement across their property. Hoping to secure its access to the trustees' property, Enbridge entered a road use agreement with the City in March 2021, by which the City agreed that Enbridge would be granted permits to use certain public roads, which at the time included Jaeger Road.

## B.  Enbridge's knowledge of the Turney litigation

The Turneys filed their lawsuit in this court on June 22, 2021. There was little docket activity in the case until the parties notified the court on August 15, 2022, that they were attempting to resolve the case. No dispositive motions were filed.

Enbridge and the City have submitted conflicting affidavits about their conversations related to the lawsuit. Enbridge's right-of-way supervisor, Jeremy Hinds, avers that City officials—including the mayor and City attorney—assured Enbridge over a period of many months that it would maintain its position that Jaeger Road was a public road owned by the City. Dkt. 12, at ¶ 11. City Attorney Tyler Wickman admits meeting with Hinds, Michele

---

[2] The property abutting the Turney property to the north is owned individually and as trustees by Mark Jaeger, Gregory Jaeger, Kevin Jaeger, and Kristine Michel. Enbridge's interests in the trustees' property include a right to purchase agreement, a right-of-way and perpetual easement, and a temporary workspaces agreement, which were executed in 2020.

Johnson, Rich Kern, Paul Halverson, and Nicki Hewell from Enbridge on April 15, 2021, and telling them that the City believed that Jaeger Road was a public road. Dkt. 20, at ¶ 3. But Wickman denies that the City ever "guarantee[d] to advance Enbridge's interests nor did Enbridge indicate that it was looking to the City to do so." *Id.*, at ¶ 4.

The next communication between Enbridge and the City about the lawsuit appears to have occurred almost a year later, just prior to an impending summary judgment deadline. Wickman avers that on April 11, 2022, he advised Attorney Adam Sullivan at Enbridge about the City's concern that it was unable to locate a dedication making Jaeger Road a City road and discussed whether Enbridge could access the trustees' property over unused and damaged train tracks to the east. Dkt. 20, at ¶ 7. Sullivan does not deny that this conversation occurred. *See* Dkt. 29.

Wickman subsequently emailed Sullivan on June 14, 2022, repeating the City's concern that it could not locate the dedication and asking about Enbridge's progress on using the tracks as an alternative means of access. *See* Dkt. 20-2; Dkt. 29-1, at 3. Sullivan responded the same day, expressing his opinion that the City did not need a dedication because "[i]f the road was used and maintained for the public then it's a public road." Dkt. 29-1, at 2. Sullivan also stated that "I think the next appearance is in September for scheduling. Any possibility of letting it marinate until then?" *Id.* Wickman replied:

> I really don't see much happening on it until September. I was just giving you a heads up, I was waiting to do so too hoping we could find a resolution or dedication but no such luck (yet), so we are prepared for whatever issues may exist down the road (no pun intended).

*Id.*

**C.  Settlement discussions**

The City began settlement negotiations with the Turneys in August 2022. Enbridge's supervisor of lands and right-of-ways for liquids projects, Richard Kern, avers that Enbridge was not included in the settlement negotiations and did not see a draft of the agreement before the parties executed it. Dkt. 13, at ¶ 39. But the City's attorneys had a few conversations with Enbridge at that time.

On August 12, 2022, Kathryn Harrell, the attorney of record for the City, spoke with Sullivan about the lawsuit. But Sullivan denies that Harrell told him about the City's plans to settle the case. Sullivan and Harrell traded messages over the next few weeks. On September 6, 2022, Sullivan left Harrell voice mail stating that Hinds had told him that the City was going to meet in a special session to vote on a settlement due to the cost of litigation and that Enbridge would have to intervene if the City tried to settle.

Wickman also avers that he approached Enbridge employees Michelle Johnson and Greg Bebeau at a golf outing on August 18, 2022, about the possible settlement terms that might be presented to the City Council in the near future. Dkt. 20, at ¶ 10. Johnson, a community engagement strategist for Enbridge, admits that Wickman told her that the City intended to settle the lawsuit on the advice of outside counsel because City staff could not locate the original resolution declaring Jaeger Road a public road. Dkt. 27, at ¶¶ 3-4. But she denies that Wickman told her about the terms of the settlement agreement. *Id.*, at ¶ 5.

**D.  Settlement approved and executed**

After the Turneys and the City reached a tentative settlement on August 30, 2022, the matter was scheduled to be heard at a City Council meeting on September 6, 2022. No one from Enbridge appeared at that meeting. (Enbridge says that the City Council discussed the

settlement agreement and voted on it in a closed session.) The City Council approved the proposed settlement at the meeting.

The parties executed their settlement agreement on September 8, 2022, stipulating that: (1) there is a private driveway but no public road over the Turney property; (2) the Turneys will record an easement for the driveway that limits its use to one single family residential structure;[3] and (3) the City will vacate Jaeger Road once the easement was recorded.[4] Dkt. 11-5. The next day, the parties filed notice of the settlement agreement with the court, and the court dismissed the case without prejudice. Dkt. 8.

## ANALYSIS

### A. Legal standard

Rule 24 of the Federal Rules of Civil Procedure provides the standards governing a motion to intervene. Rule 24(a)(2) states that "[o]n a timely motion, the court must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." A party seeking to intervene as a matter of right must show four things: (1) a timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack

---

[3] Plaintiffs' counsel avers that the Turneys recorded this easement on October 5, 2022. Dkt. 25.

[4] The parties also stipulated that this court may enter an order declaring that there is no public road over the Turneys' property if the City did not vacate the road within 45 days. *Id.* Neither party requested such an order.

of adequate representation of the interest by the existing parties to the action. *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 797 (7th Cir. 2019).

Alternatively, Rule 24(b)(1)(B) provides for permissive intervention when a timely motion is brought and the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." But "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," and any other factors it deems relevant. Rule 24(b)(3); *Planned Parenthood*, 942 F.3d at 804. "Rule 24(b) is just about economy in litigation." *City of Chi. v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 987 (7th Cir. 2011). The Seventh Circuit has explained that "[m]ore is at stake in a Rule 24(a) inquiry: the would-be intervenor is claiming that a significant interest of his is likely to be impaired if he is not permitted to intervene," whereas "Rule 24(b) is just about economy in litigation." *City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 987 (7th Cir. 2011).

There is no dispute that Enbridge has satisfied three of the four factors required to intervene as a matter of right. Enbridge has an interest in Jaeger Road that is no longer adequately represented by the City and may be impaired or impeded by the settlement it reached with the Turneys in this case. The parties' arguments focus on timeliness and the relative prejudice to the parties and Enbridge, which are factors relevant to both intervention as a matter of right and permissive intervention. Considering these factors, the court concludes that neither type of intervention is appropriate in this case.

**B. Timeliness**

Whether a motion to intervene should be denied as untimely is a decision committed to the discretion of the district court. *Holland v. Sterling Enterprises, Inc.*, 777 F.2d 1288, 1293 (7th Cir. 1985); 7C C. Wright & A. Miller, *Fed. Prac. & Proc. Civ.* § 1902 (3d ed. 2023).

Timeliness is not considered in isolation. The court also must consider the following four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; [and] (4) any other unusual circumstances." *Lopez-Aguilar v. Marion Cnty. Sheriff's Department*, 924 F.3d 375, 388 (7th Cir. 2019) (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)). The court of appeals has called prejudice to the existing parties "the most important consideration." *Id.*, at 389-90. But the test is "essentially one of reasonableness: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Id.*, at 388 (citations omitted). For example, in cases in which "the would-be intervenor may be seriously harmed if intervention is denied, courts should be reluctant to dismiss a request for intervention as a matter of right as untimely, even though they might deny the request if the intervention were merely permissive." *Id.*, at 388-89 (quoting 7C Wright & Miller § 1916).

1.  **Length of time Enbridge should have known of its interest in this case**

Enbridge contends that its motion was timely because it moved to intervene soon after the existing parties notified the court that they had reached a settlement. But "[p]rompt filing of a motion to intervene after the settlement does not indicate timeliness, particularly where there is evidence that the intervenor should have known the suit could impact its interests for some time prior to that settlement." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003); *see also Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 (2022) ("[T]he most important circumstance relating to timeliness is that the attorney general

sought to intervene 'as soon as it became clear' that the Commonwealth's interests 'would no longer be protected' by the parties in the case.").

Enbridge contends that it first discovered that its interests were no longer being protected by the City sometime after September 5, 2022, Kern decl., Dkt. 13, at ¶ 35, when it discovered that the City had suddenly abandoned its defense and settled with the Turneys "on terms that can only be described as a lay-down," Dkt. 11, at 8. It also argues that intervention would not have added anything to the case before that point because its interests were already being adequately represented by the City. *See Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (a motion to intervene will be denied if an existing party adequately represents intervenor's interests). But the court of appeals has made clear that it measures timeliness "from when the applicant has reason to know its interests might be adversely affected, not from when it knows for certain that they will be." *State v. City of Chicago*, 912 F.3d 979, 981 (7th Cir. 2019); *see also Heartwood*, 316 F.3d at 701 ("The relevant inquiry . . . is on the time between the Recreational Groups' knowledge that the suit *could* impact their interests and the motion to intervene.") (emphasis added).

There is undisputed evidence that City Attorney Wickman advised Enbridge's attorney, Sullivan, of the City's concerns about the viability of its position as to Jaeger Road as early as April 2022. Even though Sullivan dismissed those concerns in a June 2022 email to Wickman, Enbridge then had reason to know that its interests might be adversely affected. *See Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 747 (7th Cir. 2020) (describing burden of showing inadequate representation as minimal). In addition, and contrary to Enbridge's contention, it was unreasonable for Enbridge to assume that Wickman's statement to Sullivan

that he did not see much happening before September meant that the City would adequately represent all of Enbridge's interests until September.

Enbridge argues that there is a difference between the City describing problems in its case and definitively informing Enbridge that it intended to abandon meritorious defenses and concede the case in all respects. Fair point. But Enbridge's own witness, Johnson, admits that Wickman told her in mid-August 2022, that the City intended to settle the lawsuit on the advice of outside counsel because City staff could not locate the original resolution declaring Jaeger Road a public road. Even if Wickman did not identify the specific settlement terms being discussed, Enbridge was on notice of a potential settlement that might not protect its property interests.

Enbridge argues in its reply brief that Wickman's discussion with Johnson cannot trigger Enbridge's intervention right because Johnson is not an attorney and "was not engaged with the City in the dispute over Jaeger Road." Dkt. 26, at 8. But Johnson was part of the group of Enbridge representatives who first met with Wickman to discuss the City's position on the public nature of Jaeger Road in April 2021. In addition, another Enbridge employee, Greg Bebeau, was present during that discussion.

In any event, Enbridge should have known by the time the Turneys filed their lawsuit that the City's interests in advocating for maintaining Jaeger Road as a public road were far less significant than Enbridge's interest in protecting access to the Jaeger property. This fact is made clear by Enbridge's proposed pleading, which advances its own separate claims related to anticipatory breach of contract, promissory estoppel, adverse possession, prescriptive easement, and easement by necessity. *See* Dkt. 10.

Accordingly, this factor weighs strongly against intervention.

10

2.   **Relative prejudice to parties and Enbridge**

The parties invested time and effort in settling this case and stand to suffer significant prejudice if it is reopened. *See State v. City of Chicago*, 912 F.3d at 986-87 ("Once parties have invested time and effort into settling a case it would be prejudicial to allow intervention.") (citation omitted). After conducting a thorough search of its records and finding no record of dedication, the City stipulated that there is no public road over the Turney property. In addition, the Turneys already have recorded the easement contemplated in the settlement agreement. But Enbridge seeks to void the settlement agreement and resulting easement and essentially force a do-over of the entire case. *See Lopez-Aguilar*, 924 F.3d at 390 ("Where a stipulated judgment is involved, intervention can prejudice the original parties because the judgment cannot be approved without the intervenor's agreement and because the implementation of its terms will necessarily be delayed.") (citation omitted).

Enbridge contends that it will suffer significant prejudice for the following reasons if the motion is denied: (1) the City's obligations under the settlement agreement directly conflict with its preexisting contractual obligations to Enbridge under the road use agreement; (2) Line 5 falls under a U.S.-Canadian treaty that prohibits any public authority from interfering with the pipeline transit of oil across the border; and (3) Enbridge has made considerable efforts to reroute the Line 5 pipeline off the Bad River Reservation pursuant to the injunction issued by Judge Conley. The court understands that Enbridge has a significant interest in maintaining access to the trustees' property to the north of the Turney property. But Enbridge can pursue its claims in a separate lawsuit in a court with appropriate jurisdiction. *Cf. Reich v. ABC/York-Estes Corp.*, 64 F.3d 316, 322 (7th Cir. 1995) (finding significant risk of prejudice to proposed intervenors because intervention was "their one and only opportunity to define their

11

employment status" with their employer). Moreover, if Enbridge wanted a particular outcome in the litigation or settlement negotiations, it should have moved to intervene when the lawsuit was filed, or at least once it learned that the City was concerned about the viability of its argument that Jaeger Road was a public road. *See Sokaogon*, 214 F.3d at 948 (holding similar and stating "that the prospective intervenor waited until settlement was imminent strongly suggests that [the prospective intervenor] was not interested in intervening in the litigation but in blocking a settlement between the parties—or at a minimum, this settlement.").

The court is persuaded that the prejudice to the existing parties in this case outweighs that to Enbridge as a proposed intervenor.

### 3. Other circumstances

The Turneys brought this case under federal law, alleging that the City took title to a portion of their property in violation of their constitutional rights. The parties have since agreed that no unconstitutional taking occurred, so no federal claim remains in this case. Enbridge's interest in the lawsuit relates to property rights that it alleges arise under state law by contract, adverse possession, prescriptive easement, or an easement by necessity. Given these circumstances, the court concludes that the best course of action is for Enbridge to bring its state-law claims in a separate action. Permitting Enbridge to expand the substantive scope of this case will hinder, rather than enhance, judicial economy. *See One Wisconsin Inst., Inc. v. Nichol*, 310 F.R.D. 394, 400 (W.D. Wis. 2015) (holding same where plaintiffs challenged state election procedures and proposed intervenor sought to bring broader challenge to Voting Rights Act).

## C. Conclusion

For the above reasons, the court concludes that Enbridge is not entitled to intervention either as a matter of right or permissively, and the court will not exercise its discretion to allow Enbridge to intervene in this case. So Enbridge's motion to reopen this case and intervene will be denied. In light of the court's ruling, it is unnecessary to consider the Turneys' motion to strike the proposed responsive pleading filed by Enbridge. That motion will be denied as moot.

ORDER

IT IS ORDERED that:

1. The motion to reopen this case and intervene filed by Enbridge Energy Limited Partnership, Enbridge Pipelines (Lakehead) LLC, and Tri-State Holdings, LLC, Dkt. 9, is DENIED.

2. Plaintiffs Susan and Peter Turney's motion to strike, Dkt. 30, is DENIED as moot.

Entered September 25, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge